UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUAN HERNANDEZ,

            Plaintiff,

     v.

CITY OF OAKLEY, ET AL.,

            Defendant.

Case No: C-11-02415 JCS

**ORDER GRANTING AMENDED MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT [Docket No. 84]**

## I.  INTRODUCTION

Plaintiff Juan Hernandez brings this civil rights action after he was arrested and detained for violating his probation based on court orders stating that his probation was still active even though his probation had, in fact, been terminated.  Plaintiff has dismissed numerous Defendants and claims from the action.  The remaining Defendants are Contra Costa County, Probation Officer Chad Cardoza and Public Defender Laurie Mont; the remaining claims are Claims Two, Four, Six and Eight.  The parties have consented to the  jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Currently before the Court is Defendants' Amended Motion for Summary Judgment or, Alternatively, for Partial Summary Judgment ("Motion").  A hearing on the Motion was held on Friday, November 2, 2012 at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED.

## II.  BACKGROUND

### A.  Factual Background

On January 11, 2007, Plaintiff Juan Hernandez appeared in Contra Costa County

United States District Court
Northern District of California

Superior Court to enter plea bargains on two separate felony complaints, in Case Nos. 125796-3 and 150768-2.[1]  Joint Statement of Undisputed Material Facts ("UMF") 1;  *see also* Request for Judicial Notice in Support of Defendants' Amended Motion for Summary Judgment ("RJN"), Ex. A (Complaint, Case No. 125796-3 ), Ex. B (Complaint, Case No. 150786-2), Ex. C (minute order in Case No. 125796-3), Ex. D (minute order in Case No. 150786-2). [2]  The felony complaint  in Case No. 125796-3 arose from a 2005 auto accident in Walnut Creek, California.  UMF 2.  The complaint alleged that Hernandez was driving under the influence of alcohol and drugs and, in so doing, caused great bodily injury to his passenger.  UMF 3; RJN, Ex. A (Complaint, Case No. 125796-3).  The second felony complaint, in Case No. 150786-2, alleged that in 2006, while in Antioch, California, Hernandez possessed marijuana with the intent to sell.  UMF 6; RJN, Ex. B (Complaint, Case No. 150768-2).

Hernandez pled no contest to both felony complaints and he was placed on probation for a period of three years, through January 11, 2010. UMF 7; RJN, Ex. C (January 11, 2007 minute order in Case No. 125796-3) & Ex. D (January 11, 2007 minute order in Case No. 150786-2). His probation terms included completion of a substance abuse program, abstaining from the use of alcohol and controlled substances, and submitting to testing for both alcohol and drug use. UMF 8; RJN, Ex. E (Probation Order).  On March 25, 2008, Hernandez submitted a urine sample that tested positive for cocaine at a scheduled probation appointment. UMF 9; RJN, Ex. G (April 4, 2008 Petition to Revoke Probation).  The Probation Officer, Deputy Probation Officer Chad Cardoza, of the Contra Costa County Probation Department ("Probation Officer Cardoza"), found that Hernandez had violated the terms of his probation and recommended to the court that his probation be revoked. UMF 10; RJN, Ex. G (April 4, 2008 Petition to Revoke Probation).

On April 22, 2008, a combined hearing was held in Contra Costa County Superior Court on Hernandez's alleged violation of probation in Case Nos. 125796-3 and 150786-2.  UMF 12;

---

[1] Although the Joint Statement of Undisputed Material Facts lists the case number as 150788-2 in UMF 1, the complaint in that case indicates that this is a typographical error and that the case number was 150786-2.

[2] In the RJN, Defendants request that the Court take judicial notice of various public records from the criminal cases referenced above, pursuant to Rule 201 of the Federal Rules of Evidence. Plaintiff does not oppose the request, which is GRANTED.

United States District Court
Northern District of California

RJN, Ex. H (April 22, 2008 minute order in Case No. 125796-3) & Ex. I (April 22, 2008 minute order in Case No. 150786-2).  In both matters, Hernandez admitted violating his probation, the court found him in violation, and he was ordered to serve 90 days in jail.  UMF 15; RJN, Ex. H (April 22, 2008 minute order in Case No. 125796-3) & Ex. I (April 22, 2008 minute order in Case No. 150786-2).   As discussed further below, the undisputed evidence shows that an agreement had been reached at the April 22, 2008 hearing to terminate Hernandez's probation.  *See* UMF 73-76. However, the minute orders in both cases state that probation was "[r]einstated" with the "[o]riginal terms in full force and effect."  UMF 16; RJN, Ex. H (April 22, 2008 minute order  in Case No. 125796-3) & Ex. I (April 22, 2008 minute order in Case No. 150786-2).

On May 22, 2009, Hernandez was a passenger in a vehicle that was stopped by Officer Curtis Berkley, of the Oakley Police Department, on suspicion of driving under the influence ("DUI").  UMF 18; Declaration of Curtis Berkley in Support of Defendants' Amended Motion for Summary Judgment ("Berkley Decl."), ¶¶ 3-4; Declaration of  Christopher B. Whitman in Support of Defendants' Amended Motion for Summary Judgment ("Whitman Decl."), Ex. A (Hernandez Depo.) at 65-66.  The driver of the vehicle was arrested for DUI.  UMF 19; Berkley Decl., ¶ 4.  During the traffic stop, Officer Berkley smelled a strong odor of alcohol emanating from Hernandez's breath and observed a can of malt liquor on the floor board of the car. UMF 20, Berkley Decl., ¶ 6-7.  When asked, Hernandez admitted to Officer Berkley that he had been drinking malt liquor.  UMF 22; Berkley Decl., ¶ 8. During the traffic stop, Officer Berkley used his portable radio to request that Contra Costa County Sheriff's Office dispatch check the probation records to see if Hernandez was on probation.  UMF 23, Berkley Decl., ¶ 9.  The dispatcher confirmed that Hernandez was on "active probation"  and that one of the probation terms was to "consume no alcohol."  UMF 23-24; Berkley Decl., ¶ 9.  Hernandez then submitted to a preliminary alcohol screening device which gave a result of .098 percent blood alcohol content ("BAC"). UMF 25; Berkley Decl., ¶ 10.   Accordingly, Hernandez was arrested by Officer Berkley, taken to the Oakley Police Department, fingerprinted, issued a notice to appear in court, and then released that same day.  UMF 26; Berkley Decl., ¶ 11.

United States District Court
Northern District of California

On June 1, 2009, Probation Officer Cardoza prepared a petition to revoke Hernandez's probation ("Petition to Revoke Probation") on the grounds that Hernandez was arrested for violating the terms of his probation. UMF 28-29.  At that time,  Probation Officer Cardoza was in his tenth year as a Probation Officer for the County. UMF 30. The petition stated that Hernandez was arrested on May 22, 2009, with a BAC measured at .098 percent, and that his "Court Order states that he is to abstain from the use of alcohol."  UMF 31, RJN, Ex. J (Petition to Revoke Probation).

Before he prepared the Petition to Revoke Probation, Probation Officer Cardoza reviewed Hernandez's probation file and the related court orders.  UMF 33; Amended Declaration of Robert N. Kitay in Support of Opposition to MSJ; Request for Judicial Notice[3] ("Kitay Decl."), Ex. 9 (Cardoza Depo.)[4] at 27 ("I did review the hard copy file");  *see also* Whitman Decl., Ex. B (Cardoza Depo.) at 27.  He testified that there were notes in the file relating to what happened at the April 22, 2008 hearing but that he did not recall their content.  Kitay Decl., Ex. 9 (Cardoza Decl.) at 27-28; *see also* Whitman Decl., Ex. B (Cardoza Depo.) at 27-28.  He further testified that he "recognized that the court officer's notes differed from what the court order [from the April 22, 2008 hearing] said" but that the court order did not reflect that probation had been terminated and "the court officer's notes wouldn't override the court order."  Kitay Decl., Ex. 9 (Cardoza Decl.) at 29-30; *see also* Whitman Decl., Ex. B (Cardoza Depo.) at 29-30.  Probation Officer Cardoza testified that he did not know if the Probation Department had any policy for dealing with a discrepancy between  a court order and the notes of the court officer; nor did he know whether he could obtain a copy of a transcript from a criminal hearing.  Kitay Decl., Ex. 9 (Cardoza Decl.) at 33; *see also* Whitman Decl., Ex. B (Cardoza Depo.) at 33.

---

[3] Plaintiff requests that the Court take judicial notice of documents from the state court proceedings.  Because these documents are subject to judicial notice as public records under Rule 201 of the Federal Rules of Evidence, the request is GRANTED.
[4] Defendants have objected to the deposition excerpts offered by Plaintiff in Exhibits 7-9 to the Kitay Declaration on the basis that they are not accompanied by a signed certificate by the court reporter certifying the authenticity of the transcripts.   The Court need not reach this objection because, even assuming these excerpts are admissible, it finds in favor of Defendants as to all of the remaining claims in this action.  The Court also notes that most of the deposition excerpts cited by Plaintiff were also provided by Defendants in admissible form.

On June 2, 2009, the Contra Costa County Superior Court issued an order to revoke probation and issued a bench warrant for Hernandez. UMF 38;  RJN, Ex. J.  On July 17, 2009, Hernandez appeared before Judge William Kolin, of the Contra Costa County Superior Court, pursuant to the bench warrant.  UMF 39;  RJN, Ex. K (minute order) & Ex. L (hearing transcript). Judge Kolin referred to the Petition to Revoke Probation and the court's docket, and concluded that Hernandez was on felony probation that required him to abstain from using alcohol. UMF 40; RJN, Ex. L (hearing transcript) at 5.  Judge Kolin further found that, on May 22, 2009, Hernandez violated his parole when he was cited with a BAC of .098 percent. UMF 41; RJN, Ex. L (hearing transcript) at 5. The court referred Hernandez to the Public Defender's Office, remanded him to the custody of the Sheriff, and set a further hearing.  UMF 42; RJN, Ex. K (minute order).

On July 21, 2009, Hernandez appeared before Judge Richard Arnason, of the Contra Costa County Superior Court, and was represented by Deputy Public Defender Dan Clark. UMF 43; RJN, Ex. M (minute order).  Mr. Clark requested that Hernandez be released on his own recognizance.  UMF 44;  Kitay Decl., Ex. 3 (July 21, 2009 hearing transcript).[5]  However, Judge Arnason noted "several" probation violations by Hernandez and denied the request.  UMF 45. Mr. Clark also informed the Court that "[Hernandez] believes after his last [probation] violation his probation was terminated." UMF 46;  Kitay Decl., Ex. 3.  In response, the District Attorney, Judge Arnason, and Mr. Clark asked the court clerk to review the court file. UMF 47;  Kitay Decl., Ex. 3. The clerk stated that, on April 22, 2008, "[t]he probation was reinstated."  UMF 48; Kitay Decl., Ex. 3. The hearing was then continued for one week, per Mr. Clark's request.  UMF 49.

On July 28, 2009, Hernandez again appeared before Judge Arnason, this time represented by Deputy Public Defender Laurie Mont. UMF 51; RJN, Ex. O (minute order). The probation officer requested that Hernandez be given a sentence of 120 days in jail for violating his probation, and Public Defender Mont requested a shorter sentence.  UMF 52; RJN, Ex. P (July 28,

---

[5] In support of UMF 44, the parties cite to RJN, Ex. N, which is purportedly a transcript of the July 21, 2009 hearing.  While the face page of that exhibit refers to the July 21 hearing, however, the pages that follow are from a hearing on July 31, 2009.  Therefore, the Court relies on the transcript of that hearing provided by Plaintiff, attached as Exhibit 3 to the Kitay Declaration.

1  2009 transcript).  The District Attorney noted that "[t]his is his 5th violation," and that Hernandez

2  "was on probation for DUI with injury, tested positive for alcohol, and has never gone to his

3  drinking driving program for probation." UMF 53; RJN, Ex. P (July 28, 2009 transcript).

4  Hernandez was given and waived his rights to a revocation hearing, and he admitted the

5  allegations in the petition to revoke probation.  UMF 54;  RJN, Ex. P (July 28, 2009 transcript).

6  Judge Arnason found that Hernandez violated probation and ordered that his probation be

7  terminated as unsuccessful upon completion of a 120-day jail sentence. UMF 56; RJN, Ex. P.

8      Public Defender Mont does not remember Hernandez telling her at the July 28, 2009

9  hearing that his probation had previously been terminated.  UMF 57; Whitman Decl., Ex. C

10  (Mont Depo.) at 22-23. Public Defender Mont did not discuss the termination issue with Public

11  Defender Clark, nor did she know that Mr. Clark had raised the termination issue at the prior

12  hearing.  UMF 58; Whitman Decl., Ex. C (Mont Depo.) at 22-23.  Public Defender Mont testified

13  that if she had been aware of this information, she would have "made an argument . . . that

14  because [Hernandez] didn't know that he was on probation he wouldn't have known to complete

15  whatever requirements he allegedly violated, and so there's no willful violation of probation."

16  UMF 64; Whitman Decl., Ex. C (Mont Depo.) at 25.

17      After the July 28, 2009 hearing, Public Defender Mont received a telephone call from

18  Hernandez, who called her from jail. UMF 65, 66; Hernandez Depo. at 82, 90. The phone call

19  prompted her to retrieve a public defender file "from the archives" and to review the portion

20  related to the April 22, 2008 hearing.  UMF 68; Whitman Decl., Ex. C (Mont Depo.) at 7, 20.

21  Public Defender Mont found a handwritten note from the public defender who represented

22  Hernandez at that hearing, Ms. Mary Pryor.  UMF 69; RJN, Ex. Q (July 31, 2009 hearing

23  transcript).  The note indicated that an agreement was reached for Hernandez to serve jail time

24  with probation "terminated" upon release. UMF 70;  RJN, Ex. Q. Public Defender Mont tried to

25  confirm the accuracy of this information with the Probation Department, but the Probation

26  Department records from 2008 had been destroyed. UMF 71; Kitay Decl., Ex. 8 (Mont Depo.) at

27  8-10.

28

United States District Court
Northern District of California

On July 31, 2009, Public Defender Mont appeared before Judge Michael Coleman, of the Contra Costa County Superior Court. UMF 72; RJN, Ex. Q (July 31, 2009 hearing transcript). She requested that Judge Coleman look in the "confidential" part of the file with the judge's notes to confirm whether an agreement had been reached at the April 22, 2008 hearing to terminate Hernandez's probation. UMF 73; RJN, Ex. Q.  After reading the confidential notes of Judge Joni Hiramato – who presided over the April 22, 2008 hearing – Judge Coleman said: "it states here that '. . . probation terminated unsuccessfully upon release from custody.'" UMF 74;  RJN, Ex. Q. Judge Coleman sent the parties to appear before Judge Hiramoto that same day to determine whether probation was, in fact, terminated in 2008. UMF 75; RJN, Ex. Q.

On July 31, 2009, Judge Hiramoto vacated the July 28, 2009 admission of probation violation, ordered probation terminated unsuccessfully nunc pro tunc to April 22, 2008, and dismissed the allegation of probation violation. UMF 76; RJN, Ex. R (minute order).  Judge Hiramoto wrote on the minute order, "Mr. Hernandez wrongfully taken into custody for probation violation."  UMF 76; RJN, Ex. R (minute order).  Hernandez was then ordered released. UMF 77; RJN, Ex. R.

**B.  Procedural Background**

In his First Amended Complaint, Hernandez named the following defendants:  City of Oakley; City of Oakley Police Department; Contra Costa County; Contra Costa County Sheriff; Contra Costa County Department of Probation; Contra Costa County Office of the Public Defender; Chad Cardoza; Laurie Mont; Officer C. Berkley of the City of Oakley Police Department; and Does 1 To 50.  He asserted the following claims: 1) violation of 42 U.S.C. § 1983 based on alleged false arrest on May 22, 2009 (Officer Berkley, City of Oakley, and City of Oakley Police Department) (Claim One); 2) violation of 42 U.S.C. § 1983 based on false arrest and/or false imprisonment resulting from petition to revoke probation (Probation Officer Cardoza, Contra Costa County, and Contra Costa County Department of Probation) (Claim Two); 3) violation of 42 U.S.C. § 1983 based on alleged false arrest and false imprisonment on July 17, 2009, when Plaintiff was taken into custody by the Contra Costa County Sheriff (Contra Costa County Sheriff, Contra Costa County) (Claim Three); 4) Legal malpractice based on alleged

inadequate legal representation by Public Defender Laurie Mont (Laurie Mont, Contra Costa County Office of the Public Defender) (Claim Four); 5)  False arrest and/or false imprisonment based on arrest on May 22, 2009 (Officer Berkley, City of Oakley, and City of Oakley Police Department) (Claim Five); 6) False arrest and/or false imprisonment based on Petition to Revoke Probation (Probation Officer Cardoza, Contra Costa County, and Contra Costa County Department of  Probation) (Claim Six); 7)  False arrest and/or false imprisonment  based on arrest on July 17, 2009, when Plaintiff was taken into custody by the Contra Costa County Sheriff (Contra Costa County Sheriff, Contra Costa County) (Claim Seven); and 8) General negligence/ violation of statutory duty (all Defendants)(Claim Eight).

On August 17, 2012, the parties filed stipulations dismissing Officer Berkley, the City of Oakley Police Department, the City of Oakley and the Contra Costa County Sheriff from this action.  Consequently, Claims One, Three, Five and Seven - which were asserted against only the dismissed Defendants - were dismissed as well.  The remaining defendants are Probation Officer Cardoza, Public Defender Mont, the Contra Costa County Office of the Public Defender, the Contra Costa Department of Probation, and the County of Contra Costa.  The remaining claims in the action are Claims Two, Four, Six and Eight.

**C.  The Motion**

Defendants seek entry of summary judgment against Plaintiff on all remaining claims. Defendants' arguments are summarized below.

**1.  Claim Two (False Arrest/False Imprisonment under 42 U.S.C. § 1983)**

Defendants argue that Claim Two should be dismissed because: 1) based on the undisputed facts, Probation Officer Cardoza had probable cause to believe Cardoza violated the terms of his probation; 2) Probation Officer Cardoza did not have a duty to conduct an independent due diligence investigation before submitting the Petition to Revoke Probation; 3) Probation Officer Cardoza's acts are protected by absolute and/or qualified immunity;  and 4) Contra Costa County and the Contra Costa County Probation Office cannot be held liable on this claim, either on a theory of direct or vicarious liability.  Motion at 9-15.

United States District Court
Northern District of California

With respect to the first point, Defendants argue that Probation Officer Cardoza had probable cause to believe Hernandez had violated the terms of his probation because of the undisputed facts that Probation Officer Cardoza: 1) had examined facially valid court orders showing that Hernandez was on active probation and prohibited from consuming alcohol at the time of his May 22, 2009 arrest; 2) knew that Hernandez had been arrested by the Oakley Police Department with a .098 percent blood alcohol count; and 3) knew that Hernandez had a history of probation violations as he had recommended that probation be revoked for Hernandez's positive drug test in 2008. *Id*. at 9-10 (citing UMF 10, 16, 17, 27-29, 31 and 33-34). According to Defendants, even assuming Probation Officer Cardoza saw a note in Hernandez's file suggesting his probation had been terminated, he nevertheless had probable cause because he relied on the facially valid court order in the file. *Id*. at 10 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (defining probable cause as "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested")). Similarly, Defendants contend, even if there was evidence that Hernandez told Probation Officer Cardoza that his probation had been terminated, this is not sufficient to create a material question of fact as to probable cause. *Id*. (citing *Buckheit v. Dennis*, 2012 WL 1166077, at * 16 (N.D.Cal., April 06, 2012) (finding that testimony by civil rights plaintiff that he had told the arresting officers that he had not assaulted alleged victim was not sufficient to create a material issue of fact on probable cause in the face of other undisputed evidence showing that officers had probable cause to arrest the plaintiff).

Defendants also argue that under both California and federal law, probable cause is not required to arrest and detain a probationer for a probation violation, but rather, only a reasonable belief that a probation violation has occurred. *Id*. (citing *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991)). That standard is easily met here, Defendants argue, for the reasons discussed above. *Id*. at 10-11.

With respect to Plaintiff's allegation in support of his Fourth Amendment claim that Probation Officer Cardoza did not review the court file or conduct an independent due diligence investigation prior to submitting his petition to revoke, Defendants argue that: 1) the undisputed

United States District Court
Northern District of California

facts show that he did review the file; and 2) that there is no duty to look beyond the court order in the file for other courthouse records that might be relevant where there is nothing on the face of the order to indicate that it incorrect. *Id*. at 11-12 (citing *Alston v. Read*, 663 F.3d 1094, 1100 (9th Cir. 2011) (holding that for the purposes of qualified immunity, there was no clearly established right requiring prison official to review a prisoner's original court records where official relied on official court judgment and nothing on the face of that judgment indicated its illegality)).

Defendants also contend that the acts of Probation Officer Cardoza in connection with the petition to revoke probation are entitled to absolute and/or qualified immunity. *Id*. at 12-14. With respect to absolute immunity, Defendants cite cases they contend hold that probation officers preparing and submitting a probation report in a criminal case are performing a quasi-judicial function and as such, are entitled to similar, or even the same, immunity as is accorded to judges for acts done as part of their judicial function. *Id*. at 12-13 (citing *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir. 1970); *Demoran v. Witt*, 781 F.2d 155, 157 (9th Cir. 1985); *Miller v. Butte County*, 2008 U.S. Dist. LEXIS 84648, at *7-8 (E.D. Cal. 2008); *Puentes v. County of San Mateo*, 2011 WL 4005383 (N.D. Cal. Sept. 8, 2011)).[6] In the alternative, Defendants contend that Probation Officer Cardoza is entitled to qualified immunity based on the reasonable, if mistaken, belief that Hernandez was on active probation. *Id*. at 13 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Buckheit v. Dennis*, 2012 WL 1166077, at * 17-18 (N.D. Cal., April 06, 2012); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011)).

In addition, Defendants contend that even if Probation Officer Cardoza were not entitled to qualified immunity, he cannot be held liable for a violation of Plaintiff's Fourth Amendment rights because he merely filed the petition to revoke probation and therefore was not an "integral participant" in the alleged constitutional violation. *Id*. at 14 (citing *Silva v. City of San Leandro*, 744 F. Supp. 2d 1036, 1050 (N.D. Cal. 2010); *Dowell v. Griffin*, 2011 WL 5415684, at * 16-17

---

[6] Defendants also cite an unpublished Ninth Circuit case issued in 1997, in violation of Circuit Rule 36-3. The Court does not cite that case here.

1  (S.D. Cal., November 08, 2011); *Madrid v. City of Oakland*, 2010 U.S. Dist. LEXIS 130289, at

2  *2, 13 (N.D. Cal. 2010)).

3          As to Defendants Contra Costa County and the Contra Costa County Department of

4  Probation, Defendants argue that Hernandez cannot establish either vicarious or direct liability as

5  to either Defendant.  *Id.* at 16-17.  As to the County, Defendants assert that it cannot be

6  vicariously liable because it is a governmental entity and, as such, cannot be liable under § 1983

7  because Plaintiff has not alleged that the relevant conduct was pursuant to a policy or custom on

8  the part of the County.  *Id.* at 15 (citing *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691

9  (1978)).  As to the Probation Department, Defendants argue that it is not a separate legal entity

10  subject to suit under § 1983 and further, to the extent it is part of the County government, Plaintiff

11  has not alleged or presented any evidence of a policy or practice to which the alleged

12  constitutional violation is attributable.  *Id.* at 15-16.

13          **2.  Claim Six (False Arrest/ False Imprisonment under California State Law)**

14          Defendants argue that Plaintiff's state law false arrest/false imprisonment claim, like his

15  federal claim, fails because: 1) Probation Officer Cardoza had probable cause and a reasonable

16  belief that Plaintiff violated the terms of probation; 2) Probation Officer Cardoza did not have a

17  duty to conduct an independent due diligence investigation before submitting the petition to

18  revoke probation; and 3) Contra Costa County and the Probation Department cannot be held

19  liable on this claim, either on a theory of direct or vicarious liability.

20          According to Defendants, under state law, Plaintiff must show a "nonconsensual,

21  intentional confinement without lawful privilege for an appreciable length of time" to prevail on a

22  claim for false imprisonment.  *Id.* at 16 (quoting *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715

23  (1994)).  Defendants contend that Hernandez cannot prove such an unlawful confinement because

24  Probation Officer Cardoza's acts were authorized by California Penal Code Section 1203.2,

25  which "authorizes a probation officer to rearrest a person on probation if the officer has 'probable

26  cause to believe that the supervised person is violating any term or condition of his or her

27  supervision [ie. probation].'"  *Id.* (quoting Cal. Penal Code Section 1203.2).  Defendants assert

28  that Probation Officer Cardoza had probable cause to believe Hernandez was violating the terms

United States District Court
Northern District of California

11

of his probation for the reasons discussed above.  *Id*. at 16-17.  In addition, Defendants cite to California law providing that a detention is privileged if it is "legally authorized, as when made pursuant to lawful process.'"  *Id*. at 17 (citing *Muller v. Reagh*, 215 Cal. App. 2d 831, 836-837 (1963)).  Here, Defendants contend, Probation Officer Cardoza relied on a facially valid court order and therefore, this privilege applies.  *Id*.  As discussed above, Defendants further assert that only a reasonable belief that a probation violation occurred is necessary under California state law.  *Id*. at 18.  Defendants also argue that by dismissing Officer Berkley as a Defendant, Plaintiff essentially stipulated that the arrest by Officer Berkley was lawful and therefore, Hernandez cannot establish that Probation Officer Cardoza did not have probable cause to believe that Hernandez had violated the terms of his probation.  *Id*. at 18.

As to Probation Officer Cardoza's alleged failure to review the file or to conduct a due diligence investigation as to the alleged probation violation, Defendants contend that these theories of liability fail on the state law claim for the same reason they fail on the federal claim, namely, that the undisputed facts show that Probation Officer Cardoza reviewed the file and there is no authority that he had an obligation to conduct further investigation.  *Id*. at 18-19 (citing *Lucido v. Sup. Ct. of Mendocino County*, 51 Cal. 3d 335, 347 (1990)).  Defendants note that because probation hearings have a lower burden of proof than applies to criminal defendants facing a new conviction, they "may not involve . . . presentation of all evidence bearing on the underlying factual allegations."  *Id*. at 19 (citing *Lucido*, 51 Cal. 3d at 348).  The time for any investigation or fact finding, Defendants assert, would have been at the probation revocation hearing, but Hernandez waived his right to such a hearing and instead admitted to a probation violation.  *Id*.

Finally, Defendants argue that neither the County nor the Probation Department can be held directly or vicariously liable.  *Id*. at 19-20.  With respect to the County, Defendants argue that under California's Government Claims Act, it can be liable for injury caused by an employee's conduct within the scope of employment only if the employee is liable, and that is not the case here for the reasons stated above.  *Id*. at 20 (citing *Williams v. Horvath*, 16 Cal. 3d 834, 838 (1976)).  Nor can the County be held directly liable for failing to accurately record the

termination of plaintiff's employment, Defendants assert, because Plaintiff has not identified any statute that creates direct liability for the County on that basis. As to the Probation Department, Defendants argue that there is no authority that it is a separate legal entity subject to suit and in fact, it is not. *Id*.

### 3. Claim Four (Legal Malpractice)

Defendants assert that the Court should also grant summary judgment in their favor on Plaintiff's legal malpractice claim against Public Defender Mont and the Contra Costa Office of the Public Defender (Claim Four) because: 1) expert opinion evidence is required to establish malpractice and none is offered by Plaintiff in this case; 2) the undisputed facts establish that Public Defender Mont met the standard of care in representing Plaintiff; and 3) Contra Costa County Office of the Public Defender cannot be held vicariously liable on this claim because no policy or practice has been alleged under *Monell*, and it cannot be held directly liable because the Office of the Public Defender is not an independent legal entity and is not amenable to suit. Motion at 20-25.

According to Defendants, in order to prevail on his malpractice claim, Plaintiff must show that Public Defender Mont breached the duty of an attorney "to use such skill, prudence and diligence as members of the profession commonly possess." Motion at 21 (quoting *Wiley v. County of San Diego*, 19 Cal. 4th 532, 536 (1998)). Defendants argue that when a malpractice action is brought against a legal specialist, such as a public defender, expert testimony is required to define the applicable duty of care unless the claim is based on conduct within the layperson's common knowledge. *Id*. (citing *Unigard Ins. Group v. O'Flaherty & Belgum*, 38 Cal. App. 4th 1229, 1237 (1995); *Tibor v. Sup. Ct. of L.A. County*, 52 Cal. App. 4th 1359, 1364 n. 1 (1997)). Here, Defendants assert, the alleged breach is not within the common knowledge of a lay person and Plaintiff has not offered any expert testimony to show that Public Defender Mont breached the applicable standard of care. *Id*. at 21-22. Therefore, Defendants argue, the Court should enter summary judgment against Plaintiff on this claim. *Id*. at 22.

Defendants further contend that summary judgment should be entered against Hernandez on this claim because Public Defender Mont's conduct satisfies the standard of care. *Id*. at 22-24.

United States District Court
Northern District of California

13

In particular, according to Defendants, the undisputed evidence shows that: 1) at the time she first appeared on behalf of Hernandez, on July 28, 2009, no one, including Hernandez, had told her that his probation had been terminated; 2) at that point, neither Hernandez nor Public Defender Mont had any evidence that his probation had been terminated; and 3) Public Defender Mont secured Hernandez's release as soon as she located evidence from the "archives" and was able to obtain information relating to the "confidential" notes of the 2008 hearing judge. *Id.* at 22.

Defendants argue further that Public Defender Mont could not be liable based on the representation provided at the July 21, 2009 hearing because she did not represent Hernandez at that hearing and the public defender who did actually informed the judge that Hernandez believed his probation had been terminated. *Id.* In addition, Defendants note, it is undisputed that the evidence needed to establish that probation had been terminated was not easily accessible because the public defender files from 2008 were archived, the Probation Department files had been destroyed, and the judge's notes were confidential. *Id.* at 24. Finally, Defendants argue that any claim based on Public Defender Mont's failure to discover that Hernandez's probation had been terminated is rendered moot by Hernandez's voluntary admission of a probation violation and waiver of the right to a probation hearing at the July 28, 2009 hearing. *Id.* (citing Cal. Civ. Code Section 3516; *Allin v. Int'l Alliance*, 113 Cal. App. 2d 135 (1952)).

### 4. Claim Eight (Negligence)

Defendants argue that Plaintiff's negligence claim fails because a county cannot be held liable for ordinary negligence. *Id.* at 25 (citing Cal. Gov't. Code Section 815; *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175 (2003)). Furthermore, Defendants contend that employees of the county are immune from general negligence liability under Cal. Gov't. Code Section 821.6. *Id.* (citing *Cappucio, Inc. v. Harmon*, 208 Cal. App. 3d 1496, 1501 (1989); *Blackburn v. County of L.A.*, 42 Cal. App. 3d 175, 177-178 (1974)).

### D. Opposition

In his Opposition brief, Hernandez cites sixteen facts that he believes are still in dispute, arguing generally that the Court should deny Defendants' Motion on the basis of these factual

disputes.[7]   Plaintiff  goes on to argue that Defendants cannot contest the issue of whether

Hernandez was unlawfully arrested because Judge Hiramoto already decided that question and

her finding is binding in this action under the doctrine of res judicata.  Opposition at 12-15.

_____

[7] Plaintiff cites to the following facts that are purportedly in dispute, quoted verbatim (including apparent typographical errors) below:

1.      A reasonable inference, based on the state of the evidence, is that the "hard file" retained by the probation department contained notes indicating Plaintiff's probation had been terminated, as recorded by Probation Officer "Schultz".  See Joint Statement of Undisputed Material Facts (JSUMF), Facts Nos. 13, 14;  see also Plaintiff's Statement of Facts in Dispute (PSFD), Facts Nos.  4.

2.      Off. Cardoza had reason to know there were discrepancies between the notes from the probation hearing department officer, contained in the "hard file", and the minute order from the hearing on 04/22/2008.  JSUMF Fact no. 35; PSFD Fact no. 1.

3.      Off. Cardoza did nothing to clarify those discrepancies; for example, he easily could have requested and obtained the hearing transcript, but chose not to.  JSUMF Fact no. 37.

4.      The Department of Probation had no procedure in place, known to Off. Cardoza, on how to handle a situation in which the notes on the file differ from the minute order.  PSFD fact nos. 2, 3.

5.      Public Defender Pryor, at the hearing on 04/22/2008, recorded what actually occurred (ie . . . that probation had been terminated) in the face sheet and her file notes.  JSUMF fact. nos. 68, 69, 70; PSFD fact no. 6.

6.      Pub. Defender Clark, at the hearing on 7/21/2012 argued that the probation had been terminated.  JSUMF fact no. 6; PSFD fact no. 7.

7.      Pub. Defendant Clark did not speak to Pub. Defender Mont prior to the hearing on 07/28/2009.  JSUM fact no. 58; PSFD fact nos. 8.

8.      Pub. Defender Clark did not bring the issue of the probation being previously terminated to Public Defender Mont's attention in any manner (face to face discussion, email, telephone message, text, etc.). PSFD fact no. 8.

9.      Public Defender Mont did not, prior to the hearing on 07/28/2009, review the file regarding the probation revocation hearing on 04/22/2008.  JSUMF fact no. 60; PSFD fact no. 11.

10.      Plaintiff told Public Defender Mont prior to the hearing on 7/28/2012 (at a jail interview), that the probation had previously been terminated. PSFD fact no. 9.

Plaintiff argues further that even if the doctrine of res judicata does not apply, there are material fact questions as to whether Officer Cardoza exercised reasonable efforts or due diligence to investigate the discrepancies he saw in the Probation Department file. *Id.* at 15. Plaintiff argues that there is evidence that a hearing officer from the Probation Department (Officer Schultz) sat in on April 22, 2008 hearing and likely noted that probation was terminated, and there is also evidence that Probation Officer Cardoza likely saw those notes when he reviewed the file, and yet there is no evidence that he made any effort to clear up the discrepancy, even though "a simple way for [Probation Officer] Cardoza to investigate the issue of the discrepancies (which is what Public Defender Mont ultimately did) was for him to request the oral transcript from the hearing." *Id.* at 16. Plaintiff also cites to testimony by Probation Officer Cardoza that he was not aware of any policies or procedures for dealing with such a situation and asserts that nowhere in the deposition transcript does Probation Officer Cardoza "even indicate he

---

11.     In response to this information, Public Defender Mont did not pull the file from the hearing on 04/22/2008 to investigate this claim.  JSUMF fact no. 60; PSFD fact no. 11.

12.     Public Defender Mont claims that at no time until after the hearing on 07/28/2012 did Plaintiff inform her that his probation was terminated.  JSUMF fact nos. 61, 62, 63, 64, 65, 66.

13.     At the hearing on 07/28/2012, without investigating the issue of the termination of the probation, Public Defender Mont counseled Plaintiff to enter a plea of guilty to the probation violation petition even though Plaintiff's probation had previously been terminated.  PSFD fact no. 12.

14.     Public Defender Mont, after the hearing on 07/28/2012, and only because Plaintiff continued to call her regarding this issue (from the jail), finally pulled the file from the hearing on 04/22/2008.  JSUMF fact nos. 61, 62, 63, 64, 65; PSFD fact no. 13.

15.     Upon reviewing this file, Public Defender Mont learned from the "face sheet" that Plaintiff's probation had in fact been terminated as he had previously told her.  JSUMF fact no. 70.

16.     Judge Hiramoto, on 07/31/2009, determined that Plaintiff had been "wrongfully taken into custody for probation violations. ["] PSFD fact. no. 14.

Opposition at 7-9.  The evidence that purportedly supports these facts is identified in Plaintiff's Disputed Facts and attached as exhibits to the Kitay Declaration.

16

United States District Court
Northern District of California

1   brought the issue of the discrepancies to his supervisor, who reviewed  and approved the filing of

2   the petition." *Id.*

3         Plaintiff further asserts that Probation Officer Cardoza is not immune from liability

4   because immunity requires the exercise of due care, and there is evidence that Probation Officer

5   Cardoza did not exercise due care, namely, that he saw notes in the Probation Department file

6   suggesting Plaintiff's probation had been terminated but did not investigate the discrepancy.

7   Opposition at 17-18.

8         Plaintiff also argues that there are material issues of fact as to whether Public Defender

9   Mont and the Office of the Public Defender acted negligently in handling Plaintiff's case.  *Id.* at

10  18.  Plaintiff  points to six theories of negligence that he contends raise material issues of fact.  *Id.*

11  First, Public Defender Clark could have requested a short continuance of the July 21, 2009

12  hearing to retrieve the Public Defender's Office file  and "could easily have requested the internal

13  court file, and could easily have requested the transcript from the hearing on 04/22/2008 in the

14  same manner in which Public Defender Mont eventually did on 7/31/2009."  *Id.*[8]  Had Public

15  Defender Clark done these things, Plaintiff contends, he would have discovered the hearing notes

16  indicating that probation had been terminated and asked the Court to retrieve its internal file (as

17  was eventually done on July 31, 2009).  *Id.*

18         Second, Plaintiff argues that the Public Defender's Office acted negligently based on the

19  complete failure of Public Defender Clark and Public Defender Mont to communicate prior to the

20  July 28, 2009 hearing.  *Id.* [9]

21

22  ───────────────

23  [8] There is no evidence in the record that Public Defender Mont requested  (or obtained) the
    hearing transcript from the April 22, 2008 hearing.

24  [9] In Plaintiff's Amended Statement of Facts in Dispute in Support of Opposition to MSJ
    ("Plaintiff's  Disputed Facts"), Plaintiff states that "Public Defender Mont did not speak to, or

25  otherwise communicate with, Pub. Defender Clark, prior to the hearing on 07/28/2009 regarding
    the probation termination issue, and has no knowledge or recollection of whether she reviewed

26  Clark's notes (face sheet) in the file from the hearing on 07/21/2009 regarding this issue."
    Plaintiff's Disputed Facts, No. 8 (citing Mont Depo. at 24);  *see also* Plaintiff's Disputed Facts,

27  No. 11 ("Public Defender Mont has no recollection of preparing for the hearing on 07/28/2009 by
    reviewing [Plaintiff's] prior probation revocation file, or the notes prepared by Clark from the

28  hearing on 07/21/2009")(citing Mont Depo. at 20, 21, 22, 24).

United States District Court
Northern District of California

1    Third,  Plaintiff asserts that Public Defender Mont failed to prepare for the July 28, 2009

2    hearing in "any way." *Id*.  Further, Plaintiff contends that he testified at his deposition that he

3    told Public Defender Mont when she came to the jail, *prior to the July 28, 2009 hearing*, that his

4    probation had been terminated, but Public Defender Mont could not recall whether Plaintiff had

5    advised her prior to that hearing that his probation was terminated, could not recall reviewing the

6    file from the July 21, 2009 hearing and did not recall having any discussion with Public Defender

7    Clark prior to the hearing.  *Id*.[10]

8    Fourth, Plaintiff asserts that Public Defender Mont acted negligently when she advised

9    Plaintiff to enter a guilty plea to the probation revocation petition even though his probation had

10   been terminated and therefore, his guilt was "factually and legally impossible."  *Id*. at 19-20.

11   Fifth, Plaintiff contends that the Public Defender's Office is subject to liability for the

12   manner in which it maintains its files.  *Id*. at 20.  In particular, Plaintiff argues that "there is no

13   rational or reasonable explanation for why the Public Defender's office would maintain separate

14   files even though this really was the same case, with the same probation, and based on the same

15   underlying conviction."  *Id*.[11]

16   Sixth, Plaintiff argues that there is liability because Public Defender Mont failed to

17   adequately prepare for the July 28, 2009 hearing.  *Id*.

18   Plaintiff also rejects Defendants' contention that in order to prevail on his malpractice claim

19   he must present expert testimony.  *Id*. at 20-22 (citing *Tibor v. Sup. Ct.*, 52 Cal. App. 4th 1359,

20   1364 (1997)).  According to Plaintiff, no expert opinion is necessary to establish liability on

21

22

23   [10] In Plaintiff's Disputed Facts, he states that "Plaintiff testified that he told Public Defender Mont
24   about the probation revocation issue when she interviewed him at the jail prior to the hearing on
     07/28/2009."  Plaintiff's Disputed Facts, No. 10 (citing Hernandez Depo. at 80-82).  As noted
25   above, these pages of the Hernandez deposition were also provided by Defendants.  *See* Whitman
     Decl., Ex. A (pages 80, 82);  Whitman Supp. Decl., Ex. A (page 81).
26   [11] In Plaintiff's Disputed Facts, he states that "[t]he Public Defender's office maintains separate
     files for each probation revocation charge, even though it is related to the same underlying
27   conviction and based upon the same underlying probation and sentence."  Plaintiff's Disputed
     Facts, No. 15 (citing Mont Depo. at 21-22);  *see also* Whitman Decl., Ex. C (Mont Depo.) at 21-
28   22.

United States District Court
Northern District of California

Plaintiff's malpractice claim because the facts establish that Public Defender Mont engaged in "no diligence" in connection with Plaintiff's case. *Id.*

Finally, Plaintiff argues that there is evidence to support both direct and vicarious liability on the part of the County. *Id.* at 22-23.   There is vicarious liability, Plaintiff contends, because under Cal. Gov't Code Sections 815.2, 825 and 825.6, an employer is liable for the acts of its employees if the employee did not act with reasonable care. *Id.* at 22.  According to Plaintiff, because neither Probation Officer Cardoza nor Public Defender Mont used reasonable care, the County can be held vicariously liable for their conduct.  Plaintiff further asserts that there are "multiple levels of direct liability that attaches [sic] to the conduct of the Public Defender's office, which is an arm of the County of Contra Costa." *Id.* at 23.

### E.  Reply

In their Reply brief, Defendants argue that six of the purported "facts" in Plaintiff's Opposition are unsupported by any evidence.  Reply at 1.  In particular, Defendants argue that: 1) there is no evidence that Probation Officer Cardoza could have obtained a transcript of the April 22, 2008 hearing, as the undisputed facts show that he did not know if the transcript was available (UMF 37); 2) there is no evidence of the Probation Department policies or procedures to deal with discrepancies between notes in the file and court orders, as Probation Officer Cardoza testified that he was unaware of any such procedures (UMF 36); 3) there is no evidence that Public Defender "reviewed nothing" before the July 28, 2009 hearing, engaged in "no diligence" or failed to review Plaintiff's current revocation file or Public Defender Clark's notes, as the undisputed facts show that Public Defender Mont did interview Plaintiff (UMF 50), did review the current file (because that's what she always does) and does not remember whether she reviewed Mr. Clark's notes (UMF 50, 59); 4) there is no evidence that Hernandez told Public Defender Mont prior to the July 28, 2009 hearing that his probation had been terminated because the undisputed facts show that he did not tell Public Defender Mont that his probation had been terminated until *after* the July 28, 2009 hearing (UMF 61-63); 5) there is no evidence that the July 28, 2009 hearing was an adversarial probation revocation hearing because Plaintiff had waived the right to such a hearing (UMF 54) and 6) there is no evidence that Public Defender Mont

19

obtained a transcript of the April 22, 2008 hearing or presented it to Judge Hiramoto on July 31, 2009, as that did not occur.  *Id.*

In addition,  Defendants assert evidentiary objections to Exhibits 7-9 of the Kitay Declaration, containing excerpts from the depositions of Plaintiff, Public Defender Mont and Probation Officer Cardoza.  *Id.* at 2.  According to Defendants, these excerpts should not be considered because they are not accompanied by signed court reporters' certificates certifying their authenticity.  Id. at 2 (citing *Orr v. Bank of* America, 285 F.3d 764, 774 (9th Cir. 2002)).[12]

In response to Plaintiff's arguments relating to his false arrest claim under §1983 (Claim Two), Defendants argue that Plaintiff has conceded that Probation Officer Cardoza had reasonable belief that Plaintiff violated his probation.  *Id.* at 3.  Defendants reject Plaintiff's argument that there are fact questions as to whether Probation Officer Cardoza conducted a due diligence investigation, reiterating their argument that there is no such duty.  *Id.*  Even if there were, Defendants argue, it is sheer speculation on Plaintiff's part that the Probation Department file contained notes indicating that Plaintiff's probation had been terminated.  *Id.* at 4 (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987)).  In particular, although Probation Officer Cardoza testified that he noticed a "discrepancy" in the file, there is no evidence as to the type of discrepancy he noticed.  *Id.*  Further, Defendants note that Plaintiff failed to address the authority cited by Defendants on the question of absolute and qualified immunity, both of which apply, according to Defendants.  *Id.* at 5. Similarly, Defendants note, Plaintiff does not challenge Defendants' assertion that he has failed to allege or provide any evidence that the County is liable for the alleged constitutional violation under *Monell.*

Regarding Claim Six, the state law false arrest/ false imprisonment claim, Defendants argue, as they do with respect to the federal claim, that the undisputed evidence shows that Probation Officer Cardoza had probable cause to believe that Hernandez had violated his probation and that there is no duty of due diligence.  *Id.* at 6.  Defendants reject Plaintiff's contention that the County can be directly liable under state law for the acts of Probation Officer Cardoza, arguing that Plaintiff has failed to cite to a specific statute authorizing the imposition of

---

[12] As noted in footnote 4, above, the Court need not reach this objection.

United States District Court
Northern District of California

1    tort liability.  *Id*.  Defendants also argue that the doctrine of res judicata does not apply because

2    the only question decided by Judge Hiramoto was whether Plaintiff should remain in custody.  *Id*.

3    at 6-9.

4          Defendants argue that the malpractice claim (Claim Four) fails because Plaintiff has failed

5    to cite any authority distinguishing the cases cited by Defendants requiring that expert testimony

6    be introduced in support of this claim.  *Id*. at 9.  Further, Defendants argue that Public Defender

7    Mont "easily" satisfies the standard of care.  *Id*. at 9-12.  According to Defendants, Plaintiff does

8    not identify any genuine disputed facts that are material to the malpractice claim.  *Id*. at 9.

9    Further, Defendants reject Plaintiff's contention that there is evidence that Hernandez told Public

10   Defender Mont that his probation had been terminated *before* the July 29, 2009 hearing.  *Id*. at 10.

11   According to Defendants, Plaintiff relies on testimony by Hernandez that he had discussed

12   termination of his probation with the Public Defender, but the question was framed to cover the

13   entire time he was represented by the Public Defender in connection with the petition to revoke

14   probation, that is, from July 21, 2009 to July 31, 2009.  *Id*. at 10 (citing Whitman Supp. Decl., Ex.

15   A (Hernandez Depo.) at 80-81).  Defendants assert that the only direct evidence is that Hernandez

16   only discussed the termination of his probation on two occasions, namely, on July 21, 2009, with

17   Public Defender Clark, and sometime *after* the July 28, 2012 hearing, when he talked to Public

18   Defender Mont on the telephone.  *Id*. (citing UMF 46, 61-63).  As to the assertion that Public

19   Defender Mont failed to meet her duty of care because she didn't review the notes of Public

20   Defender Clark in the Public Defender's file, Defendants contend this argument is speculative

21   because there is no evidence that the file contained such notes.  *Id*. at 11. Defendants also reject

22   Plaintiff's assertion that the evidence shows that Public Defender Mont "fail[ed] to prepare in any

23   way," pointing to the evidence that she interviewed Hernandez prior to the hearing, that she

24   reviewed the current probation file, and that she did not remember if she reviewed Mr. Clark's

25   notes.  *Id*. at 12 (citing UMF 50 and Whitman Decl., Ex. C (Mont Depo.) at 21).

26         Defendants reject Plaintiff's assertion that the County can be held vicariously liable for

27   Public Defender Mont's alleged malpractice because the claim fails as to Public Defender Mont

28   for the reasons discussed above.  *Id*. at 12.  Defendants further assert that there is no statute that

allows for the imposition of direct liability on the County as to this claim.  *Id*.  As to the malpractice claim against the Office of  the Public Defender, Defendants argue that this is not a separate legal entity that is amenable to suit.  *Id*. at 13.  Further, to the extent Plaintiff argues in his Opposition that the Probation Department can be held liable for the conduct of Public Defender Dan Clark, that claim fails because Clark was not named in the amended complaint as a defendant and in any event, such a claim would fail because it is undisputed that Public Defender Clark raised the issue of the termination of Plaintiff's probation at the July 21, 2009 hearing.

Finally, Defendants contend that Plaintiff failed to respond to their argument regarding the negligence claim (Claim Eight), namely, that there is no statutory basis for suing the County for negligence and County employees are immune from such claims under Cal. Gov't Code Section 821.6.  Therefore, Defendants assert that they are entitled to summary judgment as to that claim.

**F.  Motion to Strike**

Defendants ask the Court to Strike Plaintiff's Disputed Facts on the ground that it violates this Court's standing order prohibiting the filing of separate statements of undisputed facts, as well as Docket No. 80, in which the Court stated that a previous version of this document "amount[ed] to a separate statement of undisputed facts."   Motion to Strike at 1.  Defendants also ask the Court to strike the six purported factual assertions that Defendants contend are unsupported by any evidence (discussed above).

**III.    ANALYSIS**

**A.  Motion to Strike**

Having reviewed Plaintiff's Disputed Facts, the Court concludes that it is not a separate statement of undisputed facts but instead, merely a list of the facts that Plaintiff contends remain in dispute.  Therefore, the Court finds that the document does not run afoul of the Court's standing order.  Further, while the document may be inconsistent with the Court's previous order, in the interest of deciding Defendants' Motion on the merits, the Court declines to strike Plaintiff's Disputed Facts, as it is the only document that identifies the specific evidence that Plaintiff contends gives rise to genuine disputes of material fact.

1      The Court also declines to strike the six purported facts that Defendants contend are

2  unsupported by the evidence.  While the Court may or may not accept Plaintiff's characterization

3  of the evidence in the record, it is not necessary for the Court to strike them.  *See* Fed. R. Civ. P.

4  Rule 12(f) (providing that the court may strike from a pleading "any insufficient defense or any

5  redundant, immaterial, impertinent or scandalous matter");  *see also Whittlestone, Inc. v. Handi-*

6  *Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010)("The function of a 12(f) motion to strike is to avoid

7  the expenditure of time and money that must arise from litigating spurious issues by dispensing

8  with those issues prior to trial").

9      Accordingly, the Motion to Strike is DENIED.

10  **B.  Legal Standard under Rule 56**

11     Summary judgment is proper where the pleadings, discovery and affidavits show that there

12  is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

13  law." Fed.R.Civ.P. 56(a).  Courts will grant summary judgment "against a party who fails to

14  make a showing sufficient to establish the existence of an element essential to that party's case,

15  and on which that party will bear the burden of proof at trial . . . since a complete failure of proof

16  concerning an essential element of the nonmoving party's case necessarily renders all other facts

17  immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Anderson v. Liberty*

18  *Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it might affect the

19  outcome of the suit under governing law, and a dispute about a material fact is genuine "if the

20  evidence is such that a reasonable jury could return a verdict for the nonmoving party").  It is not

21  the Court's function on a summary judgment motion to make credibility determinations or weigh

22  conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv. v. Pacific Elec.*

23  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  Rather, the  Court views the evidence in the

24  light most favorable to the nonmoving party, and views any inferences drawn from the facts in a

25  light most favorable to the nonmoving party.  *See id.* at 631.

26  **C.  The False Arrest/ False Imprisonment Claim under 42 U.S.C. § 1983 (Claim Two)**

27     Plaintiff alleges that Probation Officer Cardoza deprived him of his rights under the

28  Fourth Amendment to be free of unreasonable search and seizure when he filed a petition to

1    revoke his probation, which amounted to false arrest and/or false imprisonment without probable

2    cause.  FAC, ¶ 36.  He further alleges that the County and the Probation Department are

3    vicariously liable for the alleged constitutional violation.  The Court concludes that Defendants

4    are entitled to summary judgment on this claim because Plaintiff has failed to establish a genuine

5    dispute of material fact as to the alleged violation of Plaintiff's Fourth Amendment rights, and in

6    any event,  Defendants are entitled qualified immunity on this claim.

7            **1.  Legal Standards**

8            **a.  Section 1983**

9            Section 1983 provides a cause of action against any person who, under color of state law,

10   deprives another of any rights, privileges, or immunities secured by the Constitution and laws of

11   the United States.  Section 1983 is not a source of substantive rights, but merely a method for

12   vindicating federal rights established elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393-94

13   (1989).  In order to state a claim for a violation of § 1983, a plaintiff must allege deprivation of a

14   constitutional right by a government official acting "under the color of state law."  *Broam v.*

15   *Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

16           **b.  Qualified Immunity**

17           Qualified immunity protects government officials performing discretionary functions

18   "from liability for civil damages insofar as their conduct does not violate *clearly established*

19   statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

20   *Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added).  "Qualified immunity balances two

21   important interests—the need to hold public officials accountable when they exercise power

22   irresponsibly and the need to shield officials from harassment, distraction, and liability when they

23   perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The Supreme

24   Court has stated that the "driving force behind the creation of the qualified immunity doctrine was

25   a desire to ensure that insubstantial claims against government officials will be resolved prior to

26   discovery."  *Id*. (internal citations omitted).  Thus, courts should resolve questions of qualified

27   immunity "at the earliest possible stage in litigation."  *Id*. at 231-32 (citing *Hunter v. Bryant*, 502

28   U.S. 224, 227 (1991)).

United States District Court
Northern District of California

To determine whether a defendant is entitled to qualified immunity , courts consider: (1) whether there was a deprivation of a constitutional or statutory right, and (2) whether that constitutional or statutory right was "clearly established" at the time of the incident.  *See Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).  In *Saucier*, the Supreme Court held that district courts must first determine whether there was a violation of the plaintiff's constitutional rights, and only then determine whether that right was "clearly established." *Id*.  However, in *Pearson v. Callahan*, 555 U.S. 223, 242 (2009), the Supreme Court revisited the rule announced in *Saucier* requiring courts to address the two questions in sequence and found that it ran afoul of the "general rule of constitutional avoidance and  . . . [ran] counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable. " *Id*. at 241 (citations and quotations omitted).  Accordingly, the Court abrogated the rule, holding that "the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Id*. at 242.

### c.  **Quasi-Judicial Immunity**

"It is well established that state judges are entitled to absolute immunity for their judicial acts." *Swift v. State of California*, 384 F.3d 1184, 1188 (9th Cir. 2004)(citing *Pierson v. Ray*, 386 U.S. 547, 553-554 (1967)).  Further, judicial immunity may be extended to other officials if their "judgments are 'functional[ly] comparab[le]' to those of judges - that is, because they, too, 'exercise a discretionary judgment' as part of their function." *Id*. (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (quotation omitted)).  The Ninth Circuit has held that the preparation of presentence reports by probation officers is covered by the judicial immunity doctrine because in preparing these reports, probation officers act as "an arm of the sentencing judge" and therefore serve a function "integral to the independent judicial process."  *Demoran v. Witt*, 781 F.2d 155, 157-158 (1986).

On the other hand, "parole officials are not 'entitled to absolute immunity for conduct not requiring the exercise of quasi-judicial discretion.'" *Swift*, 384 F.3d at 1189 (quoting *Anderson v. Boyd*, 714 F.2d 906, 909 (9th Cir. 1983)).  Thus, in *Swift*, the court held that the plaintiff stated a

25

claim under § 1983 based on alleged violation of his Fourth Amendment rights by probation officers who had requested an order revoking the plaintiff's probation, finding that those defendants were not entitled to quasi-judicial immunity based on the facts alleged in the complaint.  *Id.* at 1193.  In particular, the court found that, construing the allegations in the light most favorable to the plaintiff, the probation officers were performing a non-judicial function, "more akin to a police officer seeking an arrest warrant than to a prosecutor exercising quasi-judicial discretion to initiate criminal proceedings."  *Id.* at 1193;  *see also  Davis v. Spier,* 2008 WL 1746165 (D. Ariz. April 14, 2008) (holding that probation officer who allegedly submitted probation revocation petition on the basis of conduct that probation officer should have known could not have been committed by the plaintiff and requested that court authorize plaintiff's arrest prior to probation revocation hearing was not entitled to quasi-judicial immunity because his conduct was more akin to that of police officer than that of prosecutor deciding whether to initiate proceedings, citing, *inter alia*, *Swift*);  *Puentes v. County of San Mateo*, 2011 WL 4005383 (N.D. Cal. Sept. 8, 2011) (holding that whether absolute immunity attached to a probation officer's recommendation to county that plaintiff  be cited for a probation violation presented a close question, citing *Davis v. Spier*, but declining to reach). [13]

### d.  Relevant Constitutional Violation

Plaintiff asserts his § 1983 claim on the basis of an alleged violation of the Fourth Amendment right to be free from arrest or imprisonment without probable cause.  Although the parties do not address the issue, it appears that Plaintiff has failed to assert the appropriate constitutional theory in light of the undisputed facts of this case.  In particular, because Plaintiff was detained pursuant to a court order based on the Petition to Revoke Probation, the Court

---

[13] The Court notes that in *Demoran*, the Ninth Circuit explained that the Supreme Court's decision in *Cleavinger v. Saxner*, 474 U.S. 193 (1985), required it to "reevaluate our prior holding" in *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir. 1970) (holding broadly that probation officers preparing reports for state courts possess absolute judicial immunity).  The Court is trouble by Defendants' reliance on *Burkes* in support of their argument that absolute judicial immunity applies to the actions of Probation Officer Cardoza without any citation to subsequent Ninth Circuit cases that significantly narrowed the *Burkes* holding, including  *Demoran*.  The Court also finds that Defendants' failure to cite to the *Swift* decision, which is closely on point, violated Defendants' obligation to cite to authority contrary to their position that is on point.

United States District Court
Northern District of California

concludes that the applicable constitutional violation, if any, is one for malicious prosecution rather than false arrest or imprisonment.

In *Wallace v. Kato,* the Supreme Court distinguished false imprisonment from malicious prosecution as follows:

> False arrest and false imprisonment overlap; the former is a species of the latter. "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is." M. Newell, Law of Malicious Prosecution, False Imprisonment, and Abuse of Legal Process § 2, p. 57 (1892) (footnote omitted). See also 7 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 27:2, pp. 940-942 (1990). We shall thus refer to the two torts together as false imprisonment.
>
> . . .
>
> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process--when, for example, he is bound over by a magistrate or arraigned on charges. 1 Dobbs, supra, § 39, at 74, n. 2; Keeton, supra, § 119, at 888; H. Stephen, Actions for Malicious Prosecution 120-123 (1888). Thereafter, *unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal proce*ss. Keeton, supra, § 119, at 885-886; see 1 F. Harper, F. James, & O. Gray, Law of Torts § 3.9, p. 3:36 (3d ed.1996); 7 Speiser, supra, § 27:2, at 943-945. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Keeton, supra, § 119, at 888; see also *Heck*, supra, at 484, 114 S.Ct. 2364; 8 Speiser, supra, § 28:15, at 80.

549 U.S. 538 384 (2007)(emphasis added).

Thus, where it is alleged that a probation officer has wrongfully requested that a court revoke probation, the relevant constitutional violation is malicious prosecution.  *See ,e.g., Rose v. Goldman*, 2009 WL 4891810, at *8 (E.D.N.Y. Dec. 16, 2009) (malicious prosecution claim based on probation officer's filing of violation of probation with court);  *see also Watson v. Albin*, 551 F. Supp. 2d 954, 960 (N.D. Cal. 2008) (holding that while malicious prosecution claims are generally not cognizable under § 1983, there is an exception to this rule for claims based on prosecutions that were intended to subject a person to denial of constitutional rights and that this exception applies in cases of incarceration).  On the other hand, where it is alleged that a

27

1   probation officer wrongfully detained or arrested an individual on the basis of a probation

2   violation *without* a court order, the applicable constitutional violation will be false imprisonment.

3   *See, e.g., Quinn v. Fresno County Sherriff*, 2012 2052162, at *8 (E.D. Cal. June 6, 2012) (treating

4   alleged constitutional violation based on probation officer's involvement in booking plaintiff for

5   purported probation violation without a court order as a § 1983 claim based on false

6   imprisonment).

7          While the tests for establishing wrongful imprisonment and malicious prosecution differ,

8   however, the result  is the same in this case because, whether Claim Two is framed as a false

9   arrest/imprisonment claim or a malicious prosecution claim, it requires that Plaintiff establish a

10  lack of probable cause.   *See Knapps v. City of Oakland,* 647 F.Supp.2d 1129, 1160 (N.D.Cal.,

11  2009)("In order to prevail on a § 1983 claim for malicious prosecution, Plaintiff must establish

12  that the action was (1) commenced by or at the direction of the defendant and was pursued to a

13  legal termination in his favor, (2) brought without probable cause; and (3) initiated with malice");

14  *Lacy v. County of Maricopa*, 631 F.Supp.2d 1183, 1193 (D.Ariz., 2008) ("Probable cause to arrest

15  or detain is an absolute defense to any claim under § 1983 . . . as the lack of probable cause is a

16  necessary element of each").   As discussed below, Plaintiff fails to establish a genuine dispute of

17  material fact as to probable cause.

18          **2.   Application of Legal Standards**
                    **a.   Whether Probation Officer Cardoza is Entitled to Quasi-Judicial**
19                       **Immunity**

20          The Court rejects Defendants' assertion that the actions of Probation Officer Cardoza, and in

21  particular, his filing of a petition to revoke Plaintiff's probation, is protected under the doctrine of

22  judicial immunity.  Although such immunity applies  where probation officers act as extensions of

23  the court, for instance, in the preparation of presentence reports, the Ninth Circuit, as well as at

24  least one district court, have held that a probation officer's petition to revoke probation is

25  generally  more akin to a police officer's request for a search warrant than an exercise of

26  prosecutorial discretion.  *See Swift*, 384 F.3d at 1192-1193;  *Davis*, 2008 WL 1746165, at * 3.  As

27  Defendants have offered no evidence suggesting that the facts here are distinguishable from those

28  in *Swift* and *Davis*, or indeed, even acknowledged that the actions of probation officers are

United States District Court
Northern District of California

United States District Court
Northern District of California

1   entitled to judicial immunity only where they are serving judicial functions, the Court rejects

2   Defendants' assertion that judicial immunity applies to the actions of Probation Officer Cardoza.

3   *See Burns v. Reed*, 500 U.S. 478, 486-487 (1991) ("[T]he official seeking absolute immunity

4   bears the burden of showing that such immunity is justified for the function in question.  The

5   presumption is that qualified rather than absolute immunity is sufficient to protect government

6   officials in the exercise of their duties").

7

8       **b.   Whether Defendants are Entitled to Summary Judgment on Claim
         Two Because the Undisputed Facts Show that Probation Officer
9        Cardoza Had Probable Cause or Because he did not Violate a Clearly
         Established Right**

10      In *Beck v. Ohio*, 379 U.S. 89, 91 (1964), the Supreme Court defined probable cause as

11  "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable

12  caution to believe that an offense has been or is being committed by the person being arrested."

13  Courts look to "the totality of the circumstances known to the arresting officers, [to determine if]

14  a prudent person would have concluded there was a fair probability that [the defendant] had

15  committed a crime."  *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).  "Probable cause

16  is an objective standard and the officer's subjective intention in exercising his discretion to arrest

17  is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes."

18  *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (citing  *United States v. Lopez*,  482

19  F.3d 1067, 1072 (9th Cir. 2007)).

20      Here, Plaintiff does not dispute that Probation Officer Cardoza had probable cause to

21  believe that Hernandez had consumed alcohol on the night of May 22, 2009.  Indeed, it is

22  undisputed that Hernandez admitted to Officer Berkley on the night of May 22, 2009 that he had

23  been drinking malt liquor. UMF 22.  Nor does Plaintiff dispute that prior to submitting the

24  Petition to Revoke Probation, Probation Officer Cardoza had reviewed facially valid court orders

25  stating that Plaintiff remained on active probation and under the terms of that probation, was

26  prohibited from drinking alcohol.  *See*  UMF 33. Rather, Plaintiff contends that probable cause

27  was lacking because Probation Officer Cardoza may have seen notes in the Probation Department

28  file indicating that the court orders were not valid.  Without reaching the question of whether file

notes indicating that a court order was incorrect could *ever* defeat probable cause, the Court finds that the evidence here is insufficient to create a genuine dispute of fact.  Plaintiff has cited only to Probation Officer Cardoza's testimony that there was a "discrepancy" in the Probation Department's file, but has offered no evidence as to the nature of that discrepancy.  *See* Whitman Decl., Ex. B (Cardoza Depo.) at 29-30.   No reasonable jury could conclude, in the face of this scant evidence, that Probation Officer Cardoza - having reviewed the facially valid court orders indicating Hernandez was on active probation - did not have probable cause to believe that Hernandez had violated the terms of his probation.  *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-632 (9th Cir. 1987) ("[i]nferences from the nonmoving party's 'specific facts' as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law").

Further, even assuming there were notes in the Probation Department file indicating that Plaintiff's probation had been terminated, Plaintiff has cited no authority suggesting that a Probation Officer may not rely on a facially valid court order reflecting the terms of an individual's probation.   Because there is no clearly established constitutional or statutory duty requiring Probation Officer Cardoza to look beyond the court orders, the Court concludes that the conduct of Probation Officer Cardoza is protected under the doctrine of qualified immunity.

The Court rejects Plaintiff's assertion that the question of probable cause was decided by Judge Hiramoto when she found that Hernandez had been wrongfully taken into custody.  The Court applies California law to determine the preclusive effect of the California state court decision.  *See Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 808, n. 5 (9th Cir., 2007).  Under California law, courts ask three questions: (1) was the previous adjudication on the merits, (2) was it final, and (3) does the current dispute involve the same 'claim' or 'cause of action'?  *Id.* (citations omitted).  While Judge Hiramoto wrote that Hernandez should be released because he had been wrongfully taken into custody, there is no indication that she addressed the question that is relevant here, namely, whether Probation Officer Cardoza  had a reasonable basis for believing, at the time he filed the Petition to Revoke Probation, that Hernandez remained on active

1  probation.  As there is no indication that Judge Hiramoto made any finding on that question, her

2  order has no preclusive effect in this action.

3         The Court also rejects Plaintiff's assertion that Probation Officer Cardoza had a duty of

4  diligence to investigate whether the court orders were valid.  Plaintiff has cited no authority

5  reflecting such a duty in the Fourth Amendment context and the Court has found none.[14]

6         Therefore, the Court finds that Defendants are entitled to summary judgment against

7  Plaintiff on Claim Two.[15]

8         **D.  False Imprisonment/False Arrest Claim under State Law (Claim Six)**

9         Defendants contend that they are entitled to summary judgment on Plaintiff's state law false

10  imprisonment/ false arrest claim against Probation Officer Cardoza because: 1)  Probation Officer

11  Cardoza had probable cause to believe Hernandez had violated the terms of his probation; 2) an

12  arrest is not "false" under California law if the confinement was legally authorized under valid;

13  and 3) state law does not impose a duty to investigate  on probation officers before submitting a

14

15  [14] The Court notes that Defendants argue, at some length, that the Ninth Circuit's decision in
    *Allston v. Reed,* 663 F.3d 1094, 1096 (9th Cir. 2011), as well as the district court's decision in
16  *Mullenbach v. Gardner*, 2012 WL 693040, at * 10 (D.Idaho, Feb. 9, 2012), establish that there is
    no duty to investigate under the circumstances here.  The Court does not agree with Defendants'
17  reading of those cases. In particular, in both, the court made clear that prison officials who had
    miscalculated a prisoner's sentence did not have a duty to investigate *where there was no reason*
18  *to question* the correctness of their calculations.  Thus, in *Allston*, for example, the court found
    that there was no obligation to obtain the original court files when the institutional file appeared
19  to be complete.  663 F.3d at 1099.  However, the court acknowledged that in situations where
    there was documentary evidence available to the prison officials that should have put them on
20  notice of the error, there might be a duty to investigate.  *Id.* (distinguishing *Haygood v. Younger*,
    769 F.2d 1350 (9th Cir. 1985) (en banc) and *Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990)).
21  Whatever *Allston* and *Mullenbach*  stand for, however, they do not have any bearing on Probation
    Officer Cardoza's obligations under the Fourth Amendment as neither case involves an alleged
22  Fourth Amendment violation.
23  [15] Even if Plaintiff were able to establish a constitutional violation by Probation Officer Cardoza,
    Defendants  would be entitled to summary judgment on this claim as to the County and the
24  Probation Department because Plaintiff has failed to present evidence of any policy or custom
    pursuant to which Probation Office Cardoza was acting, as required under *Monell v. Dep't of*
25  *Social Services*, 436 U.S. 658, 691 (1978).  In addition, Defendants are correct that the Probation
    Department is not a "person" or entity subject to suit under § 1983.  *See Murry v. Oakland Co.*
26  *Probation,*  2009 WL 1259722, at * 2 (E.D.Mich., April 29, 2009) (county probation department
27  not an entity subject to suit under § 1983); *Johnson v. Harris*, 2009 WL 277992, *10 (E.D.Tenn.
    Feb. 5, 2009) (same).
28

31

United States District Court
Northern District of California

petition to revoke probation.  Plaintiff 's state law false imprisonment claim fails if Probation

Officer Cardoza had probable cause to believe Plaintiff had violated the terms of his probation.

*See Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 716 (1994); Cal. Penal Code Section 1203.2.   As

discussed above, the Court finds that Probation Officer Cardoza had probable cause.  Therefore,

Defendants are entitled to summary judgment in their favor on this claim.

### E.  The Legal Malpractice Claim (Claim Four)

"In civil malpractice cases, the elements of a cause of action for professional negligence are:

'(1) the duty of the attorney to use such skill, prudence and diligence as members of the

profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection

between the breach and the resulting injury; and (4) actual loss or damage.'" *Wiley v. County of*

*San Diego*, 19 Cal.4th 532, 536 (1998) (quoting *Schultz v. Harney*, 27 Cal.App.4th 1611, 1621

(1994)).   In *Unigard Ins. Group v. O'Flaherty & Belgum*, the court explained that "[t]he

formulation of the standard of care is a question of law for the court" while "its application to the

facts of the case is a task for the trier of fact if reasonable minds might differ as to whether the

defendants' conduct has conformed to the standard." 38 Cal.App.4th 1229, 1237 (1995) (citing

*Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 546 (1993)).  The court further held that "[o]nly if the

circumstances permit no reasonable doubt about whether the attorney's conduct did or did not

violate the standard of care, may the court as a matter of law resolve the question whether an

attorney breached a duty to clients."  In the case of attorney malpractice, the "crucial inquiry is

whether their advice and actions were so legally deficient when given that it demonstrates a

failure to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity

commonly possess and exercise in performing the tasks they undertake." *Id*. (citation omitted).

California courts have held that "[w]here a malpractice action is brought against an

attorney holding [herself] out as a legal specialist and the claim against the attorney relates to

[her] expertise, then only a person knowledgeable in the specialty can define the applicable duty

of care and render an opinion on whether it was met." *Stanley v. Richmond*, 35 Cal.App.4th 1070,

1093 (1995) (citations omitted) (holding that expert testimony relating to standard of care

applicable to family law attorney was sufficient to create fact question and therefore reversing

nonsuit granted by trial court at the close of evidence in a jury trial and remanding for a new trial).   On the other hand, "'[w]here the failure of attorney performance is so clear that a trier of fact may find professional negligence unassisted by expert testimony, then expert testimony is not required.'" *Id*. (*quoting Wilkinson v. Rives*, 116 Cal.App.3d 641, 647-648 (1981)).

Defendants rely on *Tibor v. v. Superior Court*, 52 Cal.App.4th 1359 (1997) in support of their contention that Plaintiff's malpractice claim fails because he has presented no expert testimony establishing that Public Defender Mont's conduct fell below the standard of care for a criminal defense attorney.  In *Tibor*, a  public defender had been sued for malpractice  for, *inter alia*, failing to take the steps necessary to obtain DNA testing of his client, who had been charged with rape, in a timely manner.  52 Cal. App. 4th at 1363.  The defendant brought a motion for summary judgment, asserting that there was no evidence of malpractice and submitted his own declaration stating generally that his representation was done with the "skill, prudence, and diligence consistent with the members of [his] profession" in his geographical area.  *Id*. at 1364.

The trial court in *Tibor* addressed whether, in the face of the defendant's declaration, the plaintiff was required to submit his own expert declaration addressing whether the defendant had met the applicable duty of care.  *Id*. at 1364 n.1.  The court of appeal opined that plaintiffs under such circumstances should be required to do so, reasoning that "the policy reasons for requiring such declarations in medical malpractice cases appear equally applicable in those cases involving the alleged malpractice of a criminal defense attorney."  *Id*.  The trial court also addressed whether the declaration from the attorney defendant contained sufficient foundational facts to render it reliable.  *Id*.  On that question, the court of appeal opined that the declarations did not contain sufficient foundational facts to qualify him as an expert.  *Id*.  The trial court ultimately concluded that there were triable issues of fact as to whether the defendant's representation fell below the applicable standard of care, even though the plaintiff had not submitted expert testimony.  *Id*. at 1366-1367.  On appeal, the court reversed summary judgment on another ground but agreed with the trial court that there were triable issues of fact as to whether defendant breached his duty of care.  *Id*. at 1369-1370.

United States District Court
Northern District of California

1     The Court concludes that here, the question of whether Public Defendant Mont's

2   representation fell below the applicable standard of care can only be established with expert

3   testimony.  Plaintiff has offered no such expert testimony.  Under Rule 56, a party who does not

4   bear the burden of proof at trial may discharge its burden on summary judgment either by

5   "produc[ing] evidence negating an essential element of the nonmoving party's case, or, after

6   suitable discovery, . . . [by] show[ing] that the nonmoving party does not have enough evidence

7   of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."

8   *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).[16]

9   Defendants have established that they are entitled to summary judgment on Claim Four by

10  showing that Plaintiff does not have enough evidence to prove an essential element of his

11  malpractice claim.

12     The Court rejects Plaintiff's assertion that the facts here are so clear-cut that no expert

13  testimony is required.  In support of this position, Plaintiff contends that there is evidence that

14  Public Defender Mont engaged in no diligence at all and further, that Plaintiff told Public

15  Defender Mont prior to the July 28, 2009 hearing that his probation had been terminated.  The

16  undisputed facts, however, show that Public Defender Mont met with Hernandez prior to the July

17  28, 2012 hearing.  UMF 50.  Further, there is no evidence from which a reasonable jury could

18  conclude that Hernandez told Public Defender Mont *prior* to the July 28, 2009 hearing that his

19  probation had been terminated.  Plaintiff's Disputed Fact No. 10 cites pages 80 to 82 of

20  Hernandez's deposition testimony in support of a contrary conclusion, but a review of that

21  testimony reveals that Hernandez did not offer *any* testimony as to when he told Public Defender

22  Mont that he was "not supposed to be" in prison.  *See* Kitay Decl., Ex. 7 (Hernandez Depo.) at

23

24

25     [16] The court notes that this standard differs from the summary judgment standard under
    California law to the extent that California summary judgment law "continues to require a
26  defendant moving for summary judgment to present evidence, and not simply point out that the
    plaintiff does not possess, and cannot reasonably obtain, needed evidence."  *Aguilar v. Atlantic
27  Richfield Co.*, 25 Cal.4th 826, 854-855 (2001).   The *Aguilar* court explained that "[i]n this
    particular at least, [California law] still diverges from  federal law."  *Id.*

28

34

United States District Court
Northern District of California

1    80-82.   Indeed, it is not even clear from Plaintiff's testimony that he explained *why* he was not

2    supposed to be in custody to Public Defender Mont.

3        The Court also rejects Plaintiff's apparent reliance on the conduct of Public Defender

4    Clark in his opposition brief in support of his malpractice claim.  Plaintiff did not name Public

5    Defender Clark as a defendant in this action and included no allegations in his First Amended

6    Complaint that would have given notice that he intended to base his claim on the conduct of

7    Public Defender Clark.  Therefore, he cannot defeat summary judgment on the basis of Public

8    Defender Clark's actions.

9        Because the Court finds that Plaintiff has not shown a genuine dispute of fact as to Public

10   Defender Mont, the Court concludes that Defendants are also entitled to summary judgment as to

11   the Contra Costa Public Defender to the extent Plaintiff's claim is based on a theory of vicarious

12   liability.  Further, Plaintiff has not cited any authority suggesting that the Public Defender's

13   Office is subject to direct liability.  Therefore, the Court GRANTS Defendants' request for

14   summary judgment as to Claim Four.[17]

15       **F.  The Negligence Claim (Claim Eight)**

16       Plaintiff's negligence claim, as alleged in the First Amended Complaint, is based on the

17   alleged failure of all of the Defendants to review his court file to determine whether his probation

18   had been terminated.  This claim fails, as a matter of law, for the following reasons.  First, as to

19   Public Defender Mont, this claim is based on her alleged negligent representation of Hernandez,

20   which fails for the reasons stated above.  Second, as to the County and the Office of the Public

21   Defender (which is part of the County), the claim fails because these entities are entitled to

22   immunity under Cal. Gov't. Code Section 815[18] and Plaintiff has identified no specific statute that

23

24

25   [17] The Court declines to reach Defendants' assertion that Public Defender Mont, as a matter of
     law, met the applicable duty of care.  The Court notes, however, that Defendants, like Plaintiff,
26   did not provide any expert testimony that would offer guidance as to the standard of care as it
     relates to the circumstances of this case.
27   [18] Cal. Gov't. Code Section 815 provides, in relevant part, that "[a] public entity is not liable for
28   an injury, whether such injury arises out of an act or omission of the public entity or a public
     employee or any other person."

allows for the imposition of liability.  Third, Probation Officer Cardoza's conduct is subject to immunity from Plaintiff's negligence claim under  Cal. Gov't. Code Section 821.6.[19]

## IV.    CONCLUSION

For the reasons stated above, the Motion is GRANTED.  Plaintiff's remaining claims are dismissed with prejudice at to all remaining Defendants.

IT IS SO ORDERED.


Dated:  November 6, 2012

_____
Joseph C. Spero
United States Magistrate Judge

United States District Court
Northern District of California

---

[19] Cal. Gov't. Code Section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."